HANSON BRIDGETT MARCUS VLAHOS & RUDY, LLP
SUSAN G. O'NEILL - 115133
soneill@hansonbridgett.com
GARNER K. WENG - 191462
gweng@hansonbridgett.com
BARBARA FRIEDMAN - 208735
bfriedman@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone:    (415) 777-3200
Facsimile:    (415) 541-9366

Attorneys for Plaintiff
BLUE CROSS AND BLUE SHIELD ASSOCIATION

*ORIGINAL FILED*
*SEP 2 7 2007*
*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

**RS**

**C 07 5009**

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD ASSOCIATION, an Illinois not-for-profit corporation, <br><br> Plaintiff, <br><br> v. <br><br> DIGI REAL ESTATE FOUNDATION; KANWARDEEP JOHAR, an individual residing in Canada (also known as "KEN JOHAR," "KAN JOHAR," "KJOHAR," "K, J," "JK," and doing business as "KJ EXPIRED TRAFFIC," "DIGI REAL ESTATE FOUNDATION," "G DESIGN," and "WEB SERVICES PTY"); OLEKSIY KOVYRIN, an individual residing in Canada (also known as "ALEXEY KOVYRIN" and "SCOUNDREL" and doing business as "DIGI REAL ESTATE FOUNDATION"); GALT NETWORKS, INC., a Canadian Corporation (also known as "GNI, INC." and "GALT" and doing business as "EXPLODE YOUR TRAFFIC" and "EXPIRED TRAFFIC"); DOES 1 through 10, inclusive; and 206 INTERNET DOMAIN NAMES, set forth in Exhibits A and B, <br><br> Defendants. | **COMPLAINT FOR CYBERSQUATTING, TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, DILUTION AND UNFAIR COMPETITION** |

1

1355230.3

1     Plaintiff Blue Cross and Blue Shield Association brings this action against Defendants

2  Digi Real Estate Foundation, Kanwardeep Johar, Oleksiy Kovyrin, and Galt Networks for

3  cybersquatting in violation of the Anticybersquatting Consumer Protection Act, federal trademark

4  infringement, false designation of origin, dilution, and common-law trademark infringement and

5  unfair competition; and Plaintiff BCBSA brings this action *in rem* against 206 domain names set

6  forth in Exhibits A and B.

### JURISDICTION AND VENUE

8     1.     This Court has subject matter jurisdiction over the claims in this action under Title

9  28 of the United States Code, Section 1338(a) (Acts of Congress relating to trademarks) and Title

10  15 of the United States Code, Sections 1121 *et seq.* (the Lanham Act). This Court also has federal

11  question jurisdiction pursuant to Title 28 of the United States Code, Section 1331, because this

12  action arises under the laws of the United States; and this Court has diversity jurisdiction under

13  Title 28 of the United States Code, Section 1332, because the parties to this action are citizens of

14  different States, with the matter in controversy exceeding the sum or value of $75,000.

15  Additionally, the Court has jurisdiction over Plaintiff's common-law claims under Title 28 of the

16  United States Code, Section 1338(b) (unfair competition joined with a substantial and related

17  claim under trademark law) and Section 1367(a) (supplemental jurisdiction).

18     2.     This Court has *in rem* jurisdiction over the Internet domain names set forth in

19  Exhibits A (as pled in the Sixth Claim for Relief) and B (as pled in the Seventh Claim for Relief),

20  pursuant to Title 15 of the United States Code, Section 1125(d)(2). These domain names

21  constitute property located within the territorial jurisdiction of the United States and specifically

22  within this District—among other things, because the Registry for these domain names is located

23  within this District.

24     3.     Venue is proper in this District under Title 28 of the United States Code, Sections

25  1391(a)(2) and (b). Namely, and among other things, a substantial part of the events or omissions

26  giving rise to the claims in this action occurred and continues to occur in this District; and a

27  substantial part of the harm alleged herein was directed to and felt by Plaintiff within this District.

28  ///

2

**INTRADISTRICT ASSIGNMENT**

4.    Intradistrict assignment to the San Francisco or Oakland Division is appropriate under Civil L.R. 3-2(c) and (d), if applicable. Namely, and among other things, a substantial part of the events or omissions giving rise to the claims in this action occurred in the City and County of San Francisco, which is encompassed within this Division; and a substantial part of the harm alleged herein was directed to and has been felt by Plaintiff in the City and County of San Francisco, which is encompassed within this Division.

**PARTIES**

5.    Plaintiff Blue Cross and Blue Shield Association ("BCBSA") is a not-for-profit membership-based corporation organized and existing under the laws of the State of Illinois, having its principal place of business at 225 North Michigan Avenue, Chicago, IL 60601-7680.

6.    Plaintiff is informed and believes and on that basis alleges that Defendant Digi Real Estate Foundation ("Digi Real Estate") is a partnership or unincorporated association comprised at least of Defendant Kanwardeep Johar and Defendant Oleksiy Kovyrin—and likely also Defendant Galt Networks. Plaintiff is informed and believes and on that basis alleges that Defendant Digi Real Estate operates primarily in and has a principal place of business in Canada.

7.    Plaintiff is informed and believes and on that basis alleges that Defendant Kanwardeep Johar ("Johar") is an individual residing in Canada. Plaintiff is informed and believes and on that basis alleges that Johar also goes by various other names and aliases in his online and purported business activities—including "Ken Johar," "Kan Johar," "KJohar," "K, J," "JK," "KJ Expired Traffic," "Digi Real Estate Foundation," "G Design," and "Web Services Pty." Plaintiff is informed and believes and on that basis alleges that none of these names or aliases represents or is associated with a corporate or other separate legal entity from Johar.

8.    Plaintiff is informed and believes and on that basis alleges that Defendant Oleksiy Kovyrin ("Kovyrin") is an individual residing in Canada. Plaintiff is informed and believes and on that basis alleges that Kovyrin also goes by various other names and aliases in his online and purported business activities—including "Alexey Kovyrin," "Scoundrel," and "Digi Real Estate Foundation." Plaintiff is informed and believes and on that basis alleges that none of these names

3

COMPLAINT FOR CYBERSQUATTING ET AL.

1355230.3

1  or aliases represents or is associated with a corporate or other separate legal entity from Kovyrin.

2      9.    Plaintiff is informed and believes and on that basis alleges that Defendant Galt

3  Networks, Inc. is a Canada corporation that operates primarily in and has a principal place of

4  business in Canada—specifically at 36 Conover Court, Brampton, Ontario, Canada. Plaintiff is

5  informed and believes and on that basis alleges that Galt Networks also goes by various other

6  names and aliases in its online and purported business activities—including "GNI, Inc.," "Galt,"

7  "Explode Your Traffic," "Expired Traffic," and "ExpiredTraffic.com." Plaintiff is informed and

8  believes and on that basis alleges that none of these names or aliases represents or is associated

9  with a corporate or other separate legal entity from Galt Networks.

10     10.    Plaintiff is unaware of the true names and capacities of those Defendants sued

11  herein as DOES 1 through 10, inclusive, and therefore sues these Defendants by such fictitious

12  names. Plaintiff will amend this complaint to allege their true names and capacities when

13  ascertained. Each of the Defendants, including DOES 1 through 10, inclusive, is in some manner

14  responsible, in whole or in part, for the matters alleged herein; and Plaintiff's injuries as alleged

15  in this action were proximately caused by their conduct.

16     11.    Plaintiff is informed and believes and on that basis alleges that at all times relevant

17  to this action Defendants Digi Real Estate, Johar, Kovyrin, Galt Networks, and DOES 1 through

18  10, inclusive, were the agents of each other, and in doing the things alleged in this complaint,

19  were acting within the course and scope of that agency and with each other's knowledge and

20  consent.

21     12.    As to the Internet domain names set forth in Exhibits A and B, the domain-name

22  Registry for each of these domain names is Verisign, Inc. which, on information and belief, is a

23  Delaware corporation having its principal place of business at 487 East Middlefield Road,

24  Mountain View, CA 94043. As to the one non-party registrant of the Internet domain names set

25  forth in Exhibit B—DigiMedia Holding—the "WHOIS" registration information provided by this

26  registrant indicates that it is located at Via Ricardo J Alfaro, Edif. Neptuno Local #7, Panama

27  City, Tumba Muerto, 00000, PA. Plaintiff is informed and believes and on that basis alleges that

28  Digi Media Holdings is not the name of any corporate or other separate legal entity in Panama,

4

1    and the listed address does not correspond to an actual address.

## FACTUAL BACKGROUND

### Introduction

13.    Cybersquatting—the practice of registering, trafficking in, or using an Internet domain name with bad-faith intent to profit from the goodwill of a trademark belonging to someone else—is a monumental problem for businesses and consumers. In 1999, the United States enacted the Anticybersquatting Consumer Protection Act—with the legislative history noting the harm that cybersquatting causes to "consumers, electronic commerce, and the goodwill equity of valuable U.S. brand names, upon which consumers increasingly rely to locate the true source of genuine goods and services on the Internet." Nevertheless, cybersquatting appears only to be growing and worsening as a national and global problem. MarkMonitor, a company that has engaged in ongoing study of cybersquatting, reports that cybersquatting has increased by approximately 248% in roughly the past year alone—and further indicates that at any given time there are more than 275,000 instances of cybersquatting abuse.

14.    Cybersquatters continue to find more and more ways to profit from the goodwill of others. One now well-known practice is typosquatting, which is a form of cybersquatting that relies on typographical errors that occur when Internet users mis-enter Web site addresses. For instance, a cybersquatter may register a variation of a famous brand name with a slight typographical error—and when a consumer enters that same typographical error, she finds herself directed to wherever the cybersquatter has selected. The Coalition Against Domain Name Abuse reports that "nearly 75% of Internet users access Web sites through direct navigation—the practice by which the user enters a domain name into the address bar of a web browser, rather than through a search engine"; and Citizen Hawk reports that up to 20% of domain names entered directly contain misspellings.

15.    Cybersquatters also remain elusive by blatantly flouting the requirement that they list legitimate contact information in their domain-name registrations. Published reports suggest that there are approximately 3.89 million domain-name registrations containing obviously false or incomplete contact information—making it difficult or impossible to identify or locate the

5

COMPLAINT FOR CYBERSQUATTING ET AL.                                    1355230.3

1    registrant. As the Coalition Against Domain Name Abuse notes:

> False registration information (or "WHOIS" data) provides a level of anonymity that is as dangerous as it is frustrating. With no checks for legitimacy and WHOIS privacy services acting as roadblocks to accountability, the Internet provides criminals not only with lucrative opportunities for exploitation, but also with a place to hide. In any other setting outside of cyberspace, this sort of free reign is unheard of.

6    16.    Defendants Digi Real Estate, Johar, Kovyrin, and Galt Networks have each

7    engaged in one or more of these reprehensible cybersquatting practices in attempting to profit

8    from the goodwill associated with the famous trademarks of Plaintiff BCBSA. Each of the

9    domain names at issue in this action contain the entirety of one of BCBSA's federally-registered

10    marks (or a well-known or frequently-used abbreviation of one of these marks); and many are

11    simply variations of one of these marks or abbreviations with an obvious typographical error or

12    misspelling. Moreover, on information and belief, each of these Defendants have used false

13    contact information in their domain-name registrations—using purported company names that do

14    not match with any companies known in corporate records of the applicable jurisdictions and

15    using physical addresses that do not correspond to real locations.

16    ***The Blue Cross and Blue Shield Association***

17    17.    BCBSA is a national association of 39 independent, community-based, and locally

18    operated BLUE CROSS and BLUE SHIELD companies (the "BCBS Member Plans"). BCBSA

19    represents the nation's oldest and largest family of health-benefits companies. For over 70 years,

20    BCBSA (including through its predecessors in interest and its BCBS Member Plans) have

21    provided millions of families with top-quality, affordable health insurance. The BCBS Member

22    Plans currently provide healthcare coverage for more than 99 million people in the United

23    States—or about one in three Americans—and offer coverage in all 50 states, the District of

24    Colombia, and in Puerto Rico. More than 90% of hospitals and 80% of physicians in the United

25    States contract with BCBS Member Plans—more than any other insurer. BCBS Member Plans

26    currently provide coverage for half of all Fortune 500 companies and more than three-quarters of

27    all Fortune 100 companies

28    18.    The BLUE CROSS and BLUE SHIELD brands are the most recognized in the

6

COMPLAINT FOR CYBERSQUATTING ET AL.

13552303

1  health-insurance industry in the United States—and among the most recognized in any industry.

2  BCBSA is the owner of the trademarks and service marks BLUE CROSS, BLUE SHIELD, and

3  BLUE CROSS AND BLUE SHIELD ASSOCIATION—as well as design logos used as

4  trademarks and service marks consisting of the image of a Blue Cross or the image of a Blue

5  Shield (or both)—and licenses the use of various such marks to the BCBS Member Plans and

6  other licensees for the provision of health and life insurance, health care delivery services,

7  financing access to health care, and related goods and services. BCBSA (including through its

8  predecessors in interest and its BCBS Member Plans and licensees) has been using these

9  trademarks and service marks since at least as early as 1934 (BLUE CROSS) and 1939 (BLUE

10  SHIELD).

11      19.    Currently, in the United States alone, BCBSA owns approximately 178 valid and

12  subsisting U.S. federal trademark and service mark registrations. Of these, approximately 110

13  contain the word "Blue"; and approximately 77 are for the word marks BLUE CROSS, BLUE

14  SHIELD, or BLUE CROSS AND BLUE SHIELD ASSOCIATION, or are for the Blue Cross and

15  Blue Shield design logos. Many of the U.S. federal registrations have become incontestable under

16  Section 15 of the Lanham Act. Additionally, BCBSA owns similar trademark and service mark

17  registrations in more than 170 countries throughout the world. All these (along with numerous

18  trade names and common-law marks) form a BLUE "family" of trade names, trademarks, and

19  service marks ("Blue Marks"). A list of BCBSA's U.S. federal trademark registrations for Blue

20  Marks is attached as Exhibit C and incorporated here by reference, as though set forth fully here.

21  True and correct copies of a sample of such registrations are attached as Exhibit D and

22  incorporated here by reference, as though set forth fully here. Under the Lanham Act, BCBSA's

23  incontestable U.S. federal registrations are conclusive evidence of Plaintiff's exclusive right to

24  use or authorize the use of the Blue Marks in commerce.

25      20.    BCBSA (including through its BCBS Member Plans and licensees) have

26  extensively used, advertised, and promoted the Blue Marks throughout the United States. In 2006

27  alone, total system-wide gross revenue surpassed $285.97 billion. BCBSA spends millions of

28  dollars in advertising and promoting its marks, services, products, and image thereby creating

COMPLAINT FOR CYBERSQUATTING ET AL.                                    1355230.3

1  substantial goodwill in the marketplace. As a result, the general public recognizes the Blue Marks

2  separately and collectively as identifying BCBSA and its BCBS Member Plans and licensees—

3  and the quality services they render. The Blue Marks are an asset of incalculable value to

4  BCBSA; and it has vigorously and successfully protected its marks. Moreover, at least as far back

5  as 1977, federal district courts and other legal panels such as the World Intellectual Property

6  Organization Uniform Dispute Resolution Policy Panel have expressly recognized the fame of the

7  Blue Marks in designating the services of BCBSA (and its BCBS Member Plans and licensees) in

8  the context of trademark disputes or litigation.

9      21.    BCBSA (including through its BCBS Member Plans and licensees) use the word

10  mark BCBS as an acronym or abbreviation to refer to BCBSA's BLUE CROSS and BLUE

11  SHIELD service marks—and have done so since at least as early as 1982. And BCBSA

12  (including through its BCBS Member Plans and licensees) has used BCBS as a mark in

13  commerce since at least as early as August 24, 1994. BCBSA also uses "BCBS" in its Internet

14  domain names and refers to itself using "BCBS." As an example, BCBSA's main Web site is

15  accessible at www.bcbs.com. Many of the BCBS Member Plans use BCBS in combination with

16  the name or abbreviation of their state as the domain name for their Web sites—including Blue

17  Cross and Blue Shield of Alabama at www.bcbsal.com, Blue Cross and Blue Shield of Arizona at

18  www.bcbsaz.com, Blue Cross Blue Shield of Delaware at www.bcbsde.com, Blue Cross and Blue

19  Shield of Florida at www.bcbsfl.com, Blue Cross and Blue Shield of Illinois at www.bcbsil.com,

20  Blue Cross and Blue Shield of Kansas at www.bcbsks.com , Blue Cross and Blue Shield of

21  Massachusetts at www.bcbsma.com, Blue Cross Blue Shield of Missouri at www.bcbsmo.com,

22  Blue Cross and Blue Shield of Texas at www.bcbstx.com, and so on—including international

23  BCBS Member Plans such as Blue Cross and Blue Shield de Uruguay at www.bcbsu.com.uy.

24      22.    Through this extensive use, the public has come to associate the BCBS mark with

25  BCBSA (and its BCBS Member Plans and licensees), giving BCBSA strong common-law

26  trademark and service mark rights in the BCBS mark—rights which have recognized by legal

27  panels such as the World Intellectual Property Organization Uniform Dispute Resolution Policy

28  Panel.

8

COMPLAINT FOR CYBERSQUATTING ET AL.                                    1355230.3

*Background on Defendants*

23.    Defendants Digi Real Estate, Johar, Kovyrin, Galt Networks, and DOES 1 through 10, inclusive, have attempted to weave an impenetrable web of names, relationships, subterfuge, and moving targets in their Internet domain-name registrations. Careful perusal of the information that Defendants have put in their domain-name registrations—especially comparing before and after they have changed the information in attempts to avoid detection, and reviewing their use of over 30 different domain name registrars—reveals they are all closely related, if not legally the same. Indeed, on information and belief, many of the names listed as the registrants are simply aliases of one or more of these Defendants—and these names and Defendants are at a minimum acting as agents for each other, with each other's knowledge and consent. Johar appears to be the lynchpin, appearing in the records first, connected to each of Digi Real Estate, Galt Networks, and other names and aliases; and Kovyrin appears later, first as en employee of Galt Networks and then as an apparent principal of Digi Real Estate.

24.    By way of illustration, the historic and present registrant and contact information for several of the domain names at issue in this action show:

- Johar—including variations such as "Kanwardeep Johar," "Kan Johar," "KJ," and "K, J"—has appeared as the contact person listed for Digi Real Estate Foundation, for G Design, for Expired Traffic, and for Galt Networks in various domain-name registrations.

- Johar, Galt Networks, and Expired Traffic have all listed the same 36 Conover Court, Brampton, Ontario, Canada address in various domain-name registrations. The www.explodeyourtraffic.com Web site listed "Ken Johar" as having this same address—though later this was changed to a P.O. Box and different street address, also in Brampton, Ontario, Canada.

- After an e-mail from counsel for BCBSA went out to Johar at kjohar@expiredtraffic.com, several of the domain-name registrations at issue were changed from listing Johar as the registrant to listing G Design as the registrant.

- At least one of the domain names at issue in this action that had been registered to "Kan Johar" has since been changed to "Web Services Pty."

- Galt Networks describes itself on its Web site at www.galtnetworks.com as having a monetization arm called Traffic Valet at www.trafficvalet.com. The domain-name registration for TRAFFICVALET.COM used to list the registrant as Digi Real Estate Foundation—with Galt Net as the administrative and technical contacts. The registrant is now masked by use of a domain-name privacy service.

9

25.    . With these games as the backdrop, Defendants are not just cybersquatters; they are *professional* cybersquatters—particularly in typosquatting and particularly in what is called "domain parking." Domain parking is the practice of using a domain name to monetize traffic flowing from Internet users typing domain names directly into their Web browsers (sometimes called "type in traffic")—including by taking advantage of typographical errors or misspellings to lead users to a Web site that contains nothing more than advertising listings and sponsored links. Generally, when the user clicks on any of the listings or links after being led to the site, the advertiser pays money, usually on a per-click basis. One legal panel wrote of Defendant Digi Real Estate in deciding against it in a Uniform Dispute Resolution Policy domain-name proceeding:

> [T]he *Respondent is a 'serial offender,'* having been involved in several WIPO UDRP cases where it has registered domain names incorporating or based upon famous trademarks in which it does not have any legitimate rights and then sought to earn revenue out of them. . . . Previous panelists have characterized the Respondent as operating a 'typo squatting business.' . . . *Respondent apparently does not conduct any legitimate business whatsoever and has as its sole purpose the registration of domain names in order to profit from the diversion of the legitimate businesses of third parties.* See Sidestep, Inc. v. Digi Real Estate Foundation, WIPO Case No. D2007-0550 (June 5, 2007) (Emphases Supplied.)

26.    Indeed, Johar brashly describes himself in publications and online postings as a "Domain Monetization Expert"; and Galt Networks describes itself on its Web site at www.galtnetworks.com as being "primarily involved in the areas of domain monetization, performance based internet advertising and rich media web applications." In fact, Johar co-authored a book titled, *Explode Your Traffic*—a book apparently intended to help others learn to monetize Internet traffic through typosquatting and other practices. The book includes the notice, "copyright 2003 by Galt Networks and Rod Beckwith." Incidentally, on information and belief, Beckwith is a resident of California and of this District. In Johar's portions of *Explode Your Traffic*, Johar and by extension Galt Networks go into considerable detail on how to make money from typosquatting. As an example, Johar writes:

> Check out www.drudgerepport.com . . . . This is a misspelling of Matt Drudge's very popular www.drudgereport.com site which receives millions of visitors each day. . . . **I take the traffic from www.drudgereport.com and forward it to Expired Traffic**. . . . (p. 14) (Emphasis in original.)

27.    Johar goes on to describe "Cloaked/Stealth Domain Redirection," by which people

10

1355230.3

1   take typographical variations of popular domain names to redirect Internet users to sites of their

2   choosing and masking what appears in the "Address" field of the Web browser—which makes it

3   more difficult for users to realize that they have been redirected. Johar also makes pitches for

4   readers to use his and Galt Networks' services branded EXPIRED TRAFFIC, through which

5   customers can receive lists of domain names that can be had and that will receive the traffic

6   needed to make them money. In the supposedly real example EXPIRED TRAFFIC list that Johar

7   and Galt Networks provide at the back of *Explode Your Traffic,* there are several domain names

8   that incorporate the entirety of famous brands: ATT-WIRELESS-SERVICE.COM;

9   CATHOLICCHARITIESUSA.COM; and NORTHWESTCONNECT.COM.

10      28.    Johar and Galt Networks have attracted some attention from observers, including

11   from the DomainCop Web site, which noted Johar's and Galt Networks' practice of registering

12   Internet domain names that contained famous brands. It listed the following as having been

13   registered by Galt Networks:

14   - AVONCANADA.CA;                    - TDWATERHOUS.CA;
15   - BESTWESTERNHOTEL.CA;              - TDWATERHUOUSE.CA;
     - CINEPLEXODION.CA;                - TDWATERHUSE.CA;
16   - CINPLEXODEON.CA;                  - TOYATA.CA;
     - CITIMASTERCARD.CA;               - TOYTA.CA;
17   - COKEMUSIC.CA;                     - WWWHONDA.CA;
     - INGDIECT.CA;                     - WWWMASTERCARD.CA;
18   - INGDIRCT.CA;                      - WWWRADIOSHACK.CA
     - INGDIRET.CA;                     - WWWTDWATERHOUSE.CA;
19   - PAYLESSSHOESOURCE.CA;            - WWWTOYOTA.CA; and
     - PIER1IMPORT.CA;                  - YAHOOJOBS.CA.

20      29.    The DomainCop Web site later found that, after publishing its comments on these

21   domain-name registrations, Galt Networks apparently changed the listed information connected to

22   the registrations:

23          Less than a week ago I told you about Galt Networks, the company that has been
            targeting, registering and monetizing domain names that are either confusingly
24          similar to, or typos of some of the largest companies and most famous brands in
            Canada. Since the post. [sic] The whois information for all of the domain names
25          owned by the company has changed. Galt has decided to make use of a whois
            privacy service to masque details associated with their domain registrations.
26

27      30.    Though the volume of their activity might be hard to keep up with, the domain-

28   name activities of Defendants Digi Real Estate, Johar, Kovyrin, and Galt Networks have not gone

                                              11

COMPLAINT FOR CYBERSQUATTING ET AL.                                              1355230.3

1   entirely unnoticed by brand owners. As alluded earlier, **there have been at least 69 Uniform**

2   **Dispute Resolution Policy proceedings initiated against—with decisions against—Digi Real**

3   **Estate Foundation; and there have been at least six such decisions against the so-called "G**

4   **Design" and one such decision against the so-called "K, J"**, which names on information and

5   belief are both aliases of Johar. All of the decisions against the Defendants found that they had

6   registered and used Internet domain names containing trademarks (or intentional misspellings of

7   trademarks) in bad faith.

8             *Acts by Defendants regarding BCBSA's Marks*

9        31.     Defendants Digi Real Estate and Galt Networks and, on information and belief,

10  Defendants Johar (under the names "Digi Real Estate Foundation," "G Design," "K, J," and

11  "Web Services Pty"), Kovyrin (under the name "Digi Real Estate Foundation"), and DOES 1

12  through 5, inclusive, are the listed registrants—or on information and belief, the actual

13  registrants—of the Internet domain names listed in Exhibit A, as well as BCBKS.ORG.

14  DigiMedia Holding and DOES 6 through 10, inclusive, are the listed registrants—or on

15  information and belief, the actual registrants—of the Internet domain names listed in Exhibit B.

16  True and correct copies of the "WHOIS" information listed for the registrants of selected domain

17  names at issue in this action are attached as Exhibit E and incorporated here by reference, as

18  though set forth fully here. Additionally, true and correct copies of the Web sites currently

19  accessible at selected domain names at issue in this action are attached as Exhibit F and

20  incorporated here by reference, as though set forth fully here.

21       32.     Each and every one of these domain names at issue in this action (including

22  without limitation those set forth in Exhibits A and B) contains one or more of the term BLUE

23  CROSS, BLUE SHIELD, or BCBS—for which BCBSA owns a U.S. federal trademark or service

24  mark registration, common-law trademark or service mark rights, or both—or a mild variation of

25  the term BLUE CROSS, BLUE SHIELD, or BCBS containing a slight misspelling or

26  typographical error.

27       33.     Plaintiff is informed and believes and on that basis alleges that these Defendants

28  registered these domain names—and maintained the registrations—with prior actual and

                                      12

1  constructive knowledge of BCBSA's rights and U.S. federal trademark and service mark

2  registrations. None of the Defendants (or DigiMedia Holding) is affiliated with BCBSA or any of

3  its BCBS Member Plans or licensees—or their services—nor are any of them licensed to use any

4  of the Blue Marks or the mark BCBS. The domain names at issue in this action (including

5  without limitation those set forth in Exhibits A and B) and the way in they are being used for

6  domain parking and to earn advertising revenue—and the Web sites that have been and are

7  currently accessible at these domain names—are singly and collectively likely to cause confusion,

8  mistake, and deception in the public mind, or cause people to mistakenly believe that BCBSA is

9  operating or has sponsored, approved, or endorsed one or more of Defendants (or DigiMedia

10  Holding) and the Web sites accessible at these domain names. In certain instances, the domain

11  names are further likely to cause initial-interest or similar confusion.

12      34.    Defendants—and in particular Johar and on information and belief Galt Networks

13  (which on information and belief does business as "Expired Traffic")—have also had actual

14  notice from counsel for BCBSA, starting at least as early as September 2006. At that time,

15  counsel for BCBSA wrote to Johar at "Expired Traffic" to inform him of BCBSA's rights in its

16  marks regarding the domain name BLUECROSSNY.COM. Johar wrote back quickly stating,

17  "Apologies for the mistake. Could you let me know how we can work on resolving this matter."

18  Counsel for BCBSA followed up once—and again in January 2007, noting that Johar seemed also

19  to own registrations for BLUECROSSINTEXAS.COM,

20  BLUECROSSBLUESHIELDOFSC.COM, and BCBSILLINOIS.COM—and that there appeared

21  to be a relationship between Johar, G Design, and Digi Real Estate Foundation. Johar never

22  responded again. True and correct copies of this correspondence between Defendant Johar and

23  counsel for BCBSA are attached as Exhibit G and incorporated here by reference, as though set

24  forth fully here.

25      35.    By this time, BCBSA had initiated a Uniform Dispute Resolution Policy domain-

26  name proceeding against Digi Real Estate Foundation regarding 100 domain names. Digi Real

27  Estate Foundation contested the proceeding; but the panel ruled against it, writing:

28          The Respondent's conduct in registering 100 domain names which are confusingly

13

COMPLAINT FOR CYBERSQUATTING ET AL.                                    1355230.3

similar to Complainant's marks is itself sufficient to establish such a pattern of [bad faith] conduct. . . . Respondent, by using the domain name, has intentionally attempted to attract, for commercial gain, Internet users to a website by creating a likelihood of confusion with the Complainant's mark as to the source, sponsorship or affiliation, or endorsement of the Respondent's website. . . All this evidence strongly suggests that the Respondent was aware of the Complainant, and sought to profit by creating a confusing association with the Complainant. *See BCBSA v. Digi Real Estate Foundation*, WIPO Case No. D2007-0022 (May 7, 2007).

The panel ordered that all 100 domain names be transferred to BCBSA. A true and correct copy of the World Intellectual Property Organization Uniform Dispute Resolution Policy Panel decision against Defendant Digi Real Estate is attached as Exhibit H and incorporated here by reference, as though set forth fully here.

36.    Despite the panel's order to transfer the domain names, Defendants—and in particular Digi Real Estate and Kovyrin—sought to interfere with the implementation of the order by the applicable domain-name registrars. While some of the domain names were already in the process of being transferred (and ultimately were transferred to BCBSA), Defendants began interfering with the implementation of the panel order as to the remaining domain names. Specifically, they told the registrars that they had properly and timely filed a complaint in India and that the panel order was no longer effective—which was false. Nevertheless, Defendants created a new, though improper, dispute that caused some of the registrars to delay or await further word from a court before implementing the panel order. In these ways, Defendants further attempted to maintain and use their illicit domain-name registrations and cause further and ongoing injury to BCBSA.

37.    California is one of the largest and most populous states in the United States and is a large market for the goods and services provided under the Blue Marks. BCBSA, through its BCBS Member Plans Blue Cross of California and Blue Shield of California (and their branded affiliates), provide health care services to approximately 10.6 million members in this state. The corporate headquarters of both Blue Cross of California and of Blue Shield of California are in California. Plaintiff is informed and believes and on that basis alleges that Defendants Digi Real Estate, Johar, Kovyrin, Galt Networks, and DOES 1 through 10, inclusive, have long known that California is one of the biggest markets in the United States for the goods and services provided

14

COMPLAINT FOR CYBERSQUATTING ET AL.

1    under the Blue Marks and of the existence and businesses of the BCBS Member Plans operating

2    there, Blue Cross of California and Blue Shield of California. Accordingly, these Defendants well

3    knew that each of their above-stated acts and omissions would strongly impact BCBSA in

4    California.

5        38.    Moreover, Plaintiff is informed and believes and on that basis alleges that these

6    Defendants each expressly aimed their Internet domain names at issue in this action at BCBSA in

7    California and at California residents. Among other things, Plaintiff is informed and believes and

8    on that basis alleges that the Web sites accessible at each of these domain names is accessible in

9    California and targets California residents. For instance, several of the domain names include the

10    word "CALIFORNIA" or the abbreviation "CA." And the Web sites accessible at many of these

11    domain names—even those that do not include "CALIFORNIA" or "CA"—display words or

12    links that appear to be aimed at California residents—such as "Blue Cross of California" or "Blue

13    Shield of California." Moreover, on information and belief, for some period of time, Defendants

14    were using the services of Domain Sponsor—a company located in California—for domain

15    parking. On information and belief, this meant that money paid by advertisers in the monetization

16    of the domain names at issue in this action was for some period of time being paid to Domain

17    Sponsor in California and then being paid by Domain Sponsor out of California to Defendants—

18    and also means that Defendants had a contract with Domain Sponsor.

### FIRST CLAIM FOR RELIEF
#### Cybersquatting in Violation of the
#### Anticybersquatting Consumer Protection Act
#### 15 U.S.C. § 1125(d)(1)
#### against Defendants Digi Real Estate Foundation,
#### Johar, Kovyrin, Galt Networks, and DOES 1 through 10, inclusive

23        39.    Plaintiff Blue Cross and Blue Shield Association restates and re-avers the

24    allegations of Paragraphs 1 through 38, inclusive, as if set forth here in full as part of this claim

25    for relief.

26        40.    As described above, BCBSA has established trademark rights in the Blue Marks—

27    including as evidenced by the incontestable U.S. federal registrations—and in the mark BCBS.

28    As further described above, the Internet domain names at issue in this action contain the entirety

COMPLAINT FOR CYBERSQUATTING ET AL.

1355230.3

1   of one or more of the Blue Marks and the mark BCBS—or they contain a variation of or are

2   confusingly similar to one of the Blue Marks or the mark BCBS, such as a slight misspelling or a

3   version that would be likely to result from typographical or similar error. All of the domain names

4   at issue in this action are being used in "domain parking" and, therefore, evidence no use of the

5   domain names in connection with the bona fide offering of any goods or services—and nor do

6   they raise any issue of a bona fide noncommercial or fair use of the marks at issue. Rather—

7   especially given the typosquatting aspect of the domain names and the other similarity of the

8   domain names to the Blue Marks, the mark BCBS, and the actual domain names used by BCBSA

9   (and its BCBS Member Plans and licensees)—it is evident that Defendants each have the intent to

10  divert consumers from the actual online locations of BCBSA (and its BCBS Member Plans and

11  licensees) for commercial gain; and their actions here could harm the goodwill represented by

12  BCBSA's marks at issue.

13      41.    Moreover, as described above and on information and belief, Defendants each

14  have intentionally provided material and misleading false contact information in their application

15  for or maintenance of the registrations for the domain names at issue in this action—and on

16  information and belief, they each have a pattern of such conduct in their past application for or

17  maintenance of domain-name registrations. Likewise, Defendants each have registered or

18  acquired multiple domain names that on their face contain the entirety of famous trademarks and

19  service marks—including those that were distinctive, famous, or the subject of U.S. federal

20  registrations at the time of registration—or contain a variation of such marks through a slight

21  misspelling or embedded typographical error.

22      42.    Accordingly, Defendants each have registered, trafficked, and used—and continue

23  to register, traffic, and use—Internet domain names that are identical, confusingly similar to, or

24  dilutive of one or more of the Blue Marks and the mark BCBS; and Defendants each had a bad

25  faith intent to profit from BCBSA's mark or marks.

26      43.    Defendants therefore are each liable under Title 15 of the United States Code,

27  Sections 1125(d)(1)(A) for statutory damages under Section 1117(d) of not less than $1,000 and

28  not more than $100,000 for each domain name at issue in this action.

16

COMPLAINT FOR CYBERSQUATTING ET AL.

44.     By reason of the acts and omissions of Defendants (and each of them) alleged in this Complaint, BCBSA has suffered and will continue to suffer damage to its business, reputation, and goodwill and the loss of revenue and profits that BCBSA would have made but for the acts and omissions by Defendants (and each of them). A jurisdictionally sufficient brunt of this damage is felt in the State of California.

45.     The wrongful acts and omissions of Defendants (and each of them) have caused and, unless restrained and enjoined by this Court, will continue to cause, serious irreparable injury and damage to BCBSA and to the goodwill associated with the Blue Marks and the mark BCBS in this District, throughout the State of California, and elsewhere. These tortious acts have caused and, will continue to cause, grave injury to the public as well for which plaintiff has no adequate remedy at law. BCBSA is therefore entitled to injunctive relief as hereinafter set forth.

46.     Defendants each committed the above-described acts and omissions willfully, and under the circumstances of this case, the Court should award a multiplier of damages of up to three times under Section 35 of the Lanham Act. This is also an exceptional case under Section 35 of the Lanham Act, thereby entitling BCBSA to its reasonable attorneys' fees.

**SECOND CLAIM FOR RELIEF**
**Federal Trademark Infringement**
**15 U.S.C. § 1114[1]**
**against Defendants Digi Real Estate Foundation,**
**Johar, Kovyrin, Galt Networks, and DOES 1 through 10, inclusive**

47.     Plaintiff Blue Cross and Blue Shield Association restates and re-avers the allegations of Paragraphs 1 through 46, inclusive, as if set forth here in full as part of this claim for relief.

48.     Defendants each used one or more of the Blue Marks and the mark BCBS—or confusingly similar variations (such as typographical errors) of one or more of the Blue Marks and the mark BCBS—without valid license, permission, or rights. This use includes, without limitation, use in the Internet domains that each registered as set forth in Exhibit A. Furthermore, Defendants each continue to use marks and domain names confusingly similar to the Blue Marks and to the mark BCBS without valid license, permission, or rights, including without limitation in the aforementioned domain names. In fact, Defendants each have continued to and still continue

17

1  to use these trademarks with full knowledge of the above-mentioned U.S. federal trademark and

2  service mark registrations and trademark rights owned by BCBSA.

3      49.    Plaintiff is informed and believes and on that basis alleges that the acts and

4  omissions of Defendants (and each of them) are likely to cause, have caused, and are now causing

5  confusion, mistake, and deception in the public mind that the services or products offered by

6  Defendants (and each of them) are sponsored, approved, or endorsed by BCBSA. Further, the acts

7  and omissions of Defendants (and each of them) are likely to cause, have caused, and are now

8  causing confusion, mistake and deception in the public mind that BCBSA and one or more of the

9  Defendants are related entities.

10      50.    By reason of the acts and omissions of Defendants (and each of them) alleged in

11  this Complaint, BCBSA has suffered and will continue to suffer damage to its business,

12  reputation, and goodwill and the loss of revenue and profits that BCBSA would have made but

13  for the acts and omissions by Defendants (and each of them). A jurisdictionally sufficient brunt of

14  this damage is felt in the State of California.

15      51.    The wrongful acts and omissions of Defendants (and each of them) have caused

16  and, unless restrained and enjoined by this Court, will continue to cause, serious irreparable injury

17  and damage to BCBSA and to the goodwill associated with the Blue Marks and the mark BCBS

18  in this District, throughout the State of California, and elsewhere. These tortious acts have caused

19  and will continue to cause grave injury to the public as well for which plaintiff has no adequate

20  remedy at law. BCBSA is therefore entitled to injunctive relief as hereinafter set forth.

21      52.    Defendants each committed the above-described acts and omissions willfully, and

22  under the circumstances of this case, the Court should award a multiplier of damages of up to

23  three times under Section 35 of the Lanham Act. This is also an exceptional case under Section

24  35 of the Lanham Act, thereby entitling BCBSA to its reasonable attorneys' fees.

### THIRD CLAIM FOR RELIEF
**False Designation of Origin**
**15 U.S.C. § 1125[a]**
**against Defendants Digi Real Estate Foundation,**
**Johar, Kovryin, Galt Networks, and DOES 1 through 10, inclusive**

25

26

27

28      53.    Plaintiff Blue Cross and Blue Shield Association restates and re-avers the

18

COMPLAINT FOR CYBERSQUATTING ET AL.

1355230.3

1    allegations of Paragraphs 1 through 52, inclusive, as if set forth here in full as part of this claim

2    for relief.

3        54.    The above-described use by Defendants (and each of them) of marks and domain

4    names confusingly similar to the Blue Marks and the mark BCBS is a false designation of origin

5    as to the services or products made available by Defendants in interstate commerce. By virtue of

6    the marks and Internet domain names confusingly similar to the Blue Marks and the mark BCBS,

7    consumers who use or learn of the services or goods of Defendants (and each of them) will

8    mistakenly believe that the goods and services associated with one or more of the Defendants

9    originate with, are sponsored by, or are affiliated with BCBSA.

10       55.    The adoption and use by Defendants (and each of them) of marks confusingly

11   similar to the Blue Marks and the mark BCBS, the continuation of such use, and all of the other

12   acts and omissions of Defendants (and each of them) create the likelihood that the public will be

13   confused as to the true source, sponsorship, or affiliation of the goods or services of Defendants

14   (and each of them). As a result, BCBSA and the public have been damaged, and unless

15   Defendants are each enjoined, will continue to be irreparably damaged further, as hereinabove

16   alleged.

17       56.    Defendants each committed the above-described acts and omissions willfully, and

18   under the circumstances of this case, the Court should award a multiplier of damages of up to

19   three times under Section 35 of the Lanham Act. This is also an exceptional case under Section

20   35 of the Lanham Act, thereby entitling BCBSA to its reasonable attorneys' fees.

21   **FOURTH CLAIM FOR RELIEF**
**Dilution**
22   **15 U.S.C. § 1125[c]**
**against Defendants Digi Real Estate Foundation,**
23   **Johar, Kovryin, Galt Networks, and DOES 1 through 10, inclusive**

24       57.    Plaintiff Blue Cross and Blue Shield Association restates and re-avers the

25   allegations of Paragraphs 1 through 56, inclusive, as if set forth here in full as part of this claim

26   for relief.

27       58.    The above-described use by Defendants (and each of them) of marks and domain

28   names confusingly similar to the Blue Marks and the mark BCBS is likely to impair and has

19

COMPLAINT FOR CYBERSQUATTING ET AL.

1    impaired the distinctiveness of the Blue Marks and the mark BCBS and their ability to identify

2    and distinguish the goods and services of BCBS—and has also harmed the reputation of the Blue

3    Marks and the mark BCBS by associating them with one or more of the Defendants.

4        59.    The above-described acts and omissions by Defendants (and each of them) have

5    caused irreparable and continuing injury to BCBSA and the public. Defendants each further

6    willfully intended to trade on the reputation of BCBSA and to cause dilution of its marks.

7        60.    Defendants each committed the above-described acts and omissions willfully, and

8    under the circumstances of this case, the Court should award a multiplier of damages of up to

9    three times under Section 35 of the Lanham Act. This is also an exceptional case under Section

10   35 of the Lanham Act, thereby entitling BCBSA to its reasonable attorneys' fees.

11                              **FIFTH CLAIM FOR RELIEF**
                  **Common Law Trademark Infringement and Unfair Competition**
12                       **against Defendants Digi Real Estate Foundation,**
                  **Johar, Kovyrin, Galt Networks, and DOES 1 through 10, inclusive**
13

14       61.    Plaintiff Blue Cross and Blue Shield Association restates and re-avers the

15   allegations of Paragraphs 1 through 60, inclusive, as if set forth here in full as part of this claim

16   for relief.

17       62.    The above-described use by Defendants (and each of them) of marks and domain

18   names confusingly similar to the Blue Marks and the mark BCBS and the above-described acts

19   and omissions by Defendants (and each of them) constitute trademark infringement and unfair

20   competition at common law. BCBSA and the public have been damaged by this infringement and

21   unfair competition, and, unless Defendants are each enjoined, will continue to be damaged.

22       63.    These above-described uses and acts permit Defendants each to misappropriate

23   and unfairly trade upon the valuable goodwill and reputation of BCBSA and will subject the

24   goodwill and reputation in the Blue Marks and the mark BCBS to the hazards and perils attendant

25   upon the business activities of Defendants (and each of them), activities over which BCBSA has

26   no control.

27   ///

28   ///

COMPLAINT FOR CYBERSQUATTING ET AL.                                           1355230.3

1

2

3

4

### SIXTH CLAIM FOR RELIEF
#### Cybersquatting in Violation of the
#### Anticybersquatting Consumer Protection Act
#### 15 U.S.C. § 1125(d)(2)
#### *in rem* against the Internet Domain Names
#### Set Forth in Exhibit A

5      64.    Plaintiff Blue Cross and Blue Shield Association restates and re-avers the

6   allegations of Paragraphs 1 through 63, inclusive, as if set forth here in full as part of this claim

7   for relief.

8      65.    As described above, the Internet domain names set forth in Exhibit A contain the

9   entirety of one or more of the Blue Marks and the mark BCBS in which the rights are owned by

10   BCBSA, for which BCBSA owns the above-mentioned U.S. federal registrations, and which are

11   otherwise protected under Title 15 of the United States Code, Sections 1125(a) and (c)—or the

12   domain names contain a confusingly similar variation of one of the Blue Marks or the mark

13   BCBS, such as a slight misspelling or a version that would be likely to result from typographical

14   or similar error. Accordingly, these domain names violate the rights of BCBSA in such marks.

15      66.    Given the history of Defendants each trying to evade legal proceedings, there is a

16   concern that giving Defendants notice of this action before filing could lead to more efforts by

17   Defendants to change registrars or otherwise try to move or transfer the domain-name

18   registrations at issue to try to avoid the outcomes of this action. Nevertheless, to the extent that

19   any of the Defendants might contest BCBSA's assertion of *in personam* jurisdiction over them,

20   this claim is appropriate to bring and maintain *in rem* against the domain names themselves.

21      67.    Therefore, a court order that the domain names at issue in this claim be transferred

22   to BCBSA is appropriate.

23

24

25

26

### SEVENTH CLAIM FOR RELIEF
#### Cybersquatting in Violation of the
#### Anticybersquatting Consumer Protection Act
#### 15 U.S.C. § 1125(d)(2)
#### *in rem* against the Internet Domain Names
#### Set Forth in Exhibit B

27      68.    Plaintiff Blue Cross and Blue Shield Association restates and re-avers the

28   allegations of Paragraphs 1 through 67, inclusive, as if set forth here in full as part of this claim

21

COMPLAINT FOR CYBERSQUATTING ET AL.

1355230.3

1    for relief.

2        69.    As described above, the Internet domain names set forth in Exhibit B contain the

3    entirety of one or more of the Blue Marks and the mark BCBS in which the rights are owned by

4    BCBSA, for which BCBSA owns the above-mentioned U.S. federal registrations, and which are

5    otherwise protected under Title 15 of the United States Code, Sections 1125(a) and (c)—or the

6    domain names contain a confusingly similar variation of one of the Blue Marks or the mark

7    BCBS, such as a slight misspelling or a version that would be likely to result from typographical

8    or similar error. Accordingly, these domain names violate the rights of BCBSA in such marks.

9        70.    The registrant for these domain names, DigiMedia Holding, is using the domain

10   names for domain parking to earn advertising revenue trading on the goodwill of BCBSA, has

11   provided false and incomplete contact information in its application for or maintenance of the

12   registrations for these domain names, and has engaged in similar practices in registering other

13   domain names containing the trademarks of other companies. Accordingly, DigiMedia Holding

14   has registered, trafficked, and used—and continues to register, traffic, and use—Internet domain

15   names that are identical, confusingly similar to, or dilutive of one or more of the Blue Marks and

16   the mark BCBS; and DigiMedia Holding had and has a bad faith intent to profit from BCBSA's

17   marks.

18       71.    Given the Plaintiff's experience with the named Defendants in this action and the

19   industry-wide problems of Internet domain-name registrants hiding their identities and contact

20   information—and given the apparently false name and contact information provided by

21   DigiMedia Holding—there is a concern that giving DigiMedia Holding notice of this action

22   before filing could lead to efforts by it to change registrars or otherwise try to move or transfer

23   the domain-name registrations at issue to try to avoid the outcomes of this action. In any event,

24   Plaintiff is informed and believes and on that basis alleges that, given the incomplete and false

25   information listed by DigiMedia Holding in its domain-name registrations to date, it is unable to

26   assert *in personam* jurisdiction over DigiMedia Holding. Accordingly, this claim is appropriate to

27   bring and maintain *in rem* against the domain names themselves.

28       72.    Therefore, a court order that the domain names at issue in this claim be transferred

                                          22

COMPLAINT FOR CYBERSQUATTING ET AL.                                            1355230.3

1    to BCBSA is appropriate.

2    **PRAYER FOR RELIEF**

3    Plaintiff Blue Cross and Blue Shield Association prays as follows:

4    (1)    Against Defendants Digi Real Estate Foundation, Johar, Kovyrin, Galt Networks,

5    and DOES 1 through 10, inclusive, on the First through Fifth Claims for Relief:

6    (a)    For an order that these Defendants (and each of them) be permanently

7    enjoined and restrained from directly or indirectly:

8    (i)    Using any trademark or trade name including or confusingly similar

9    to any of the Blue Marks or the BCBS mark;

10    (ii)    Performing any actions or using any words, names, styles, titles or

11    marks that are likely to cause confusion, to cause mistake, or to

12    deceive; or to otherwise mislead the trade or public into believing

13    that he or it is endorsed or sponsored by, affiliated with, or

14    associated in any way with BCBSA;

15    (iii)    Using any trade practices whatsoever, including those complained

16    of herein, which tend to unfairly compete with or injure BCBSA, its

17    businesses, and the goodwill pertaining thereto;

18    (iv)    Registering or applying to register as a trademark or trade name any

19    trademark or trade name including or confusingly similar to any of

20    the Blue Marks or the BCBS mark—or maintaining any such

21    registration; or

22    (v)    Registering any Internet domain name incorporating or confusingly

23    similar to any of the Blue Marks or the BCBS mark—or

24    maintaining any such registrations; and

25    (b)    For an order that each and every registration for Internet domain names

26    incorporating or confusingly similar to any of the Blue Marks or the BCBS

27    mark held by any of the Defendants—including in particular though

28    without limitation those set forth in Exhibit A—be transferred to BCBSA;

23

COMPLAINT FOR CYBERSQUATTING ET AL.                                    1355230.3

1        and

2        (c)    For statutory damages against each such Defendant under 15 U.S.C. §

3               1117(d) in the amount of $100,000 per domain name registered by or to

4               that Defendant as set forth on Exhibit A;

5        (d)    For damages against each such Defendant in the amount of its profits and

6               compensatory damages for the injuries sustained by BCBSA in

7               consequence of the acts and omissions described in this Complaint,

8               according to proof;

9        (e)    For treble damages under 15 U.S.C. § 1117(b); and

10   (2)    On the Sixth and Seventh Claims for Relief, pertaining to the Internet domain

11          names set forth in Exhibits A and B, for an order that each and every Internet

12          domain name set forth in Exhibits A and B be transferred to BCBSA (including to

13          BCBSA's Internet domain-name registrar of choice);

14   (3)    For its costs—and its attorneys' fees under 15 U.S.C. § 1117(b); and

15   (4)    For such other and further relief as the Court may deem just and proper.

16

17   DATED: September 27, 2007              Hanson Bridgett Marcus Vlahos & Rudy,
                                            LLP
18

19

20                                  By: _Susan G. O'Neill_____
                                        SUSAN G. O'NEILL
21                                      Attorneys for Plaintiff
                                        BLUE CROSS AND BLUE SHIELD
22                                      ASSOCIATION

23

24

25

26

27

28

COMPLAINT FOR CYBERSQUATTING ET AL.                                              1355230.3

1

2

## CERTIFICATION OF INTERESTED PARTIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the
named parties, there is no such interest to report.

DATED:  September 27, 2007                     Hanson Bridgett Marcus Vlahos & Rudy,
                                               LLP


                                               By: _Susan G. Neill_____
                                               SUSAN G. O'NEILL
                                               Attorneys for Plaintiff
                                               BLUE CROSS AND BLUE SHIELD
                                               ASSOCIATION

COMPLAINT FOR CYBERSQUATTING ET AL.                                    13552230.3