EXHIBIT H

WIPO Domain Name Decisi:     )2007-0022                                                Page 1 of 11



# WIPO Arbitration and Mediation Center

ADMINISTRATIVE PANEL DECISION

Blue Cross and Blue Shield Association v. Digi Real Estate Foundation/Domain Admin/NA NA

Case No. D2007-0022

## 1. The Parties

The Complainant is Blue Cross and Blue Shield Association, Chicago, United States of America, represented by Hanson Bridgett Marcus Vlahos & Rudy, LLP, United States of America.

The Respondent is Digi Real Estate Foundation/Domain Admin/NA NA, Panama City, Panama.

## 2. The Domain Names and Registrars

The 100 disputed domain names and the 35 corresponding registrars ('the Registrars') of those domain names, are set out in the attachment to this decision. References in this decision to numbers of domain names (indicated by the abbreviation "no. X") are to the disputed domain names as numbered in that attachment.

## 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on January 6, 2007. Between February 1 and February 15, 2007 the Complainant filed amendments to the Complaint, to add 17 further domain names to the original Complaint which specified 83.

On January 9, 2007, and by some further communications on February 14, 2007, the Center transmitted by email to the Registrars a request for registrar verification in connection with the domain names at issue.

Between January 9, 2007 and February 19, 2007 most of the registrars (and in some cases by registrars on behalf of others) confirmed the details relating to the domain names registered with them. An exception was the registrars, ESoftWiz (no.77), Humeia Corporation (no. 83), Indirection Identity Corporation (nos. 84 and 85), Interlink Co., Ltd (no. 81), Lead Networks Domains Pvt. Ltd., Rally Domains.Com a/k/a Enom (no. 94), R.B. Data Net Ltd (no.95), Threadtrade.com, Inc. (no.97), Web Internet LLC (no.99). Those registrars did not respond to the Center's request, and follow up reminders, for registrar verification. On February 15, 2007, the Center sent a further email to those registrars indicating that, in the absence of a contrary response, it would take the Whois records and certain other administrative information as being correct in relation to the disputed domain names registered with those registrars.

A small number of other registrars did not respond in relation to a small number of disputed domain names. In those

cases, the Whois details were taken to be relevantly correct, and assumptions made that the proceeding is otherwise administratively compliant in relation to those domains, the status of which has been checked through Internic.

The Center verified that the Complaint together with the amendments to the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified the Respondent of the Complaint, and the proceedings commenced on February 15, 2007. In accordance with the Rules, paragraph 5(a), the due date for Response was March 7, 2007. The Response was filed with the Center on March 7, 2007.

The Center appointed James A. Barker as the sole panelist in this matter on April 17, 2007. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

4. Factual Background

The following facts are not contested.

The Complainant is an Illinois not-for-profit corporation, having its principal place of business in Chicago, Illinois, United States of America. The Complainant is an association of 39 independently operated, local Blue Cross and Blue Shield Association Member Plans ("Member Plans"), which are licensed by the Complainant to provide health and life insurance, head care delivery services, and related goods and services.

The Complainant uses the domain name "bcbs.com" for its main website, and uses BCBS-derivative domain names, such as "bcbshealthissues.com", for other web sites.

The Complainant is the owner of a large number of trademarks registered in the United States of America including marks on the principal register of the USPTO. Those marks include, for example, the marks BLUE CROSS, BLUE SHIELD, BLUE CROSS AND BLUE SHIELD ASSOCIATION, BLUE CARE, BLUE ACCESS, THE BLUE CROSS AND BLUE SHIELD PLAN ATLASS: A DIRECTORY OF BCBS PLAN CARE MANAGEMENT, QUALITY, AND AFFORDABILITY INITIATIVES. The majority of the Complainant's marks include the word "blue" in combination with another word. The Complainant also is the registrant of other kinds of marks, including for example HEALTHBENEFIT BANK and WALKING WORKS. The Complainant did not provide evidence of having a registered mark in an acronym (standing alone) of its corporate name, or some other acronym of its marks.

In checking contact details for the Respondent, the Center provided copies of the websites to which the disputed domains reverted on February 15, 2007. On that date, the disputed domain names all reverted to essentially the same website. The website was a portal website. The portal website provided lists of links to other sites, e.g. under a general heading "Popular Categories" to links such as "Health Insurance", "Blue Cross Health Insurance", "Health Fitness", and "Houses for Sale". Under another general heading "Favorite Categories" there are lists of links to things such as "Travel", "Business", "Finance" and "Entertainment". The website differed very slightly between each disputed domain name – that difference being only that the disputed domain name appeared at the top of the website to which it reverted.

The Complainant also provided evidence that, on December 26, 2006, the website at many of the disputed domains, including e.g. "www.bluecossblueshield.com" and "www.anthembluecrossandblueshield.com" reverted to substantively the same portal website as that described above.

The disputed domain names appear to have been registered variously between August 2004 and August 2006.

While the disputed domain names are registered in the name of the Respondent, the Respondent's legal status is unclear. The Respondent does not explain its business, or many other details of its operations, in the Response.

The Respondent has previously been a serially unsuccessful respondent in proceedings under the Policy. See *Adidas-Salomon AG v. Digi Real Estate Foundation, Patrick Williamson*, WIPO Case No. D2006-0748; *Teledyne Technologies Incorporated v. Digi Real Estate Foundation*, WIPO Case No. D2006-1054; *Choice Hotels International, Inc. v Digi Real Estate Foundation a/k/a Digi Real Estate*, NAF No. 987950; *Toyota Motor Credit Corporation v. Digi Real Estate Foundation*, WIPO Case No. D2005-1111. These cases were also variously cited by the Complainant.

### 5. Parties' Contentions

#### A. Complainant

The following is summarized from the Complaint.

**Identical or confusingly similar**

The Complainant is the owner of approximately 210 U.S. trademark and service mark applications and registrations, of which approximately 132 contain the word "blue" and approximately 76 of which are for the word marks BLUE CROSS, BLUE SHIELD, BLUE CROSS AND BLUE SHIELD ASSOCIATION, and 'Blue Cross and Blue Shield' design marks.

The Complainant and its Member Plans also use the mark BCBS as an acronym that refers to the Complainant's BLUE CROSS and BLUE SHIELD marks. Through extensive use of that mark since at least 1982, the public has come to associate the BCBS mark with the Complainant and its Member Plans. The Complainant's common law rights in its BCBS mark have been recognized by other panels. See *Blue Cross and Blue Shield Association v. Domain Deluxe*, WIPO Case No. D2005-0209; *Blue Cross and Blue Shield Association v. Garrett Ltd./John Nunley*, WIPO Case No. D2003-0028.

The Complainant's marks have been extensively used, advertised and promoted throughout the United States of America in connection with the Complainant, its Member Plans and licensees, and their services.

The Complainant categorizes the disputed domain names into four categories: Firstly, there are domain names that incorporate the Complainant's marks and add a geographical descriptor. The Complainant notes that its Member Plans commonly use its marks and the name of the State in which they operate as their business or trade name.

Secondly, there are domain names that incorporate its Member Plans' name or mark. The Complainant's licensees include e.g. Anthem Blue Cross and Blue Shield and Highmark Blue Cross and Blue Shield, to which it claims disputed domain names such as <anthembluecrossandblue shield.com> and <highmarkbcbs.com> are confusingly similar.

Thirdly, there are domain names that are misspelled versions of the Complainant's marks. The Complainant claims that these disputed domain names demonstrate the Respondent's intention to 'typosquat'.

Fourthly, the Complainant categorizes the remaining domain names as miscellaneous. It identifies five of the 100 disputed domain names as falling into this category, including "bluecrossdentalinsurance.com" and "bcbshmo.com".

**Rights or legitimate interests**

The Complainant claims that the Respondent has no rights or legitimate interests in the disputed domain names. Essentially, the Complainant claims that it has not authorized the Respondent to use any of its well-known marks, and that the Respondent is not making a use that would demonstrate rights or legitimate interests under paragraph 4(c)(i) – (iii) of the Policy.

**Bad faith**

The Complainant claims that the Respondent has registered and used the disputed domain names in bad faith, to free ride off the fame of the Complainant's marks. It states that it is inconceivable that the Respondent was unaware of its famous marks.

#### B. Respondent

The following is summarized from the Response, which generally denies the allegations made in the Complaint.

**Procedure**

The Respondent claims that the Complaint suffers from "gross procedural anomalies" (which it does not identify) and has not approached this proceeding "with clean hands" (which it does not explain), and should be dismissed.

The Respondent also claims that separate Complaints should have been filed, because the Registrars of the domain names are different. It also claims that the Center did not follow the proper procedure for verification of the disputed domain names. The reason for this claim appears to be that there is "one single complaint for domains with different factual grounds".

### Identical or confusingly similar

The Respondent denies that the Complainant has exclusive trademark rights in the words "blue", "shield" or "cross".

### Rights or legitimate interests

The Respondent claims that it is "in the process of starting a business using the words Blue, Cross, Shield etc". The Respondent claims that the registration of a number of domain names with the same words in them is itself a demonstration of making *bona fide* preparations to use the domain names, in accordance with paragraph 4(c)(i) of the Policy. The Respondent claims that it is preparing to use the disputed domain names in connection with a *bona fide* offering which it does not wish to disclose at this point in time, as disclosure may jeopardize its business plans. It states that, because it has plans to start businesses all over the United States of America and, later, all over the world, it has registered domain names with geographical additions "to further expand as and when the need arises".

### Bad faith

The Respondent denies that the disputed domain names have been registered and used in bad faith.

The Respondent denies that the disputed domain names are misspellings of marks of the Complainant.

The Respondent claims that it has never sought to sell the disputed domain names. Its continued practice of registering similar domain names is, it claims, evidence of its *bona fide* business intentions.

The Respondent claims that the disputed domain names are currently "parked" until it develops a website in connection with its proposed business.

### Reverse domain name hijacking

The Respondent claims that a finding of reverse domain name hijacking should be made against the Complainant.

### 6. Discussion and Findings

For the Complaint to succeed, under paragraph 4(a) of the Policy, the Complainant must prove that:

(i) the disputed domain names are identical or confusingly similar to a trademark or service mark in which the Complainant has rights; and

(ii) the Respondent has no rights or legitimate interests in respect of the disputed domain names; and

(iii) the disputed domain names were registered in bad faith and are being used in bad faith.

The Complainant must prove each of these three elements, which are discussed in turn below, immediately after the brief discussion of the procedural issues raised by the Respondent.

### A. Procedural Issues

The Respondent has firstly put forward some procedural issues. It claims that the Complaint should be denied on those procedural grounds.

The Panel does not make any such finding. The Respondent did not identify any administrative or procedural errors in connection with this case. The Panel's own review of the case file indicates that the procedural requirements of the Policy have been satisfied.

The Respondent also claims that separate Complaints should have been filed, corresponding with each separate registrar. That claim is misconceived. The Policy provides for a complaint to be filed against a respondent. A "respondent" is defined in paragraph 1 of the Rules as "the holder of the domain-name registration against which a complaint is initiated." The Respondent in this case is the registered holder of all the domain names which are the subject of this dispute. As such, it is appropriate that there is one Complaint in relation to all those domain names.

### B. Identical or Confusingly Similar

**The Complainant's registered rights**

The Complainant provided evidence of its registered rights in its trademarks. It is clear that the Complainant has rights in those registered marks, for the purpose of paragraph 4(a)(i) of the Policy. The Complainant attached evidence of those rights to the Complaint.

**The Complainant's common law rights**

The Complainant also argues that it has common law rights in the mark BCBS, on the basis of its use of that mark in connection with its services and those of its licensed Member Plans. It is well-established that "rights", for the purpose of paragraph 4(a) of the Policy, can include common law or unregistered trademark rights. It is also well-established that in order to successfully demonstrate common law or unregistered trademark rights, a complainant must show that the claimed mark has become a distinctive identifier associated with the complainant or its goods or services. This sometimes requires (where the mark comprises an otherwise common or generic term) a complainant to demonstrate that the mark has acquired "secondary meaning".

Some panels have also noted that having rights in a common law mark indicates that the 'owner' of the mark would succeed in an action for passing off or misleading conduct, against another who used that mark. For example, the panel in *Fortune Promoseven v. IQ*, WIPO Case No. D2000-1370 noted that common law rights are:

"...rights in and to a name or logo, for example, which are ordinarily rights acquired through long and extensive use such as to entitle the holder to succeed in a passing off action or unfair competition action. The basis of the action is that the unauthorized use of the name or logo or other device by a third party will be likely to lead people to believe that the use in question is by or with the authority of the rights owner."

While rights in a registered mark are, as a matter of evidence, generally easier to establish than rights of an unregistered nature, where a complainant is found to have established rights of either type, the question under the first element of the Policy then becomes: 'is the relevant domain name identical or confusingly similar to that mark?'.

Finding such unregistered rights will usually require evidence that the mark is distinctively associated with the Complainant or its goods or services. For a statement generally to this effect, see e.g. *Skype Limited v. Benjamin Decraene*, WIPO Case No. D2005-1112.

In the present case, the Complainant has provided some evidence of the distinctive association of the mark BCBS with it, its licensees and its services. As evidenced in the Complaint, the mark BCBS is used by its Member Plans in their domain names and by the Complainant in its main web site "www.bcbs.com". The Complainant also claims that its marks, including the BCBS mark, have been advertised and promoted extensively throughout the United States of America. The Complainant does not directly provide evidence of that claim. However, the Panel notes that it is unlikely that the Respondent would have registered so many domain names which contain the Complainant's trademarks, apparent abbreviations, and/or combinations, unless the Respondent intended them to have some resonance in the market. The Panel also notes that the Complainant's common law rights in that mark have been accepted by the Panel in *Blue Cross and Blue Shield Association v. Domain Deluxe*, WIPO Case No. D2005-0209. That previous case involved similar facts and, in relation to the BCBS mark, many similar domain names. The Panel is satisfied that for present purposes, the Complainant has succeeded, on balance, in establishing common law rights in the BCBS mark.

**Domains wholly incorporating the Complainant's registered marks**

In this case, 52 of the 100 domain names in dispute wholly incorporate the Complainant's registered marks, largely with the addition of geographical identifiers or words that appear to increase the likelihood of confusion. (In the attachment to this decision, these domain names are numbered 1, 4-8, 13, 22 – 27, 29-30, 45-58, 60-65, 68-69, 72, 77, 81, 84, 89-96, 98-100.)

It is well-established that a domain name that wholly incorporates a trademark may be confusingly similar to that trademark for purposes of the Policy, despite the addition of common or generic words. See, for example, *Dr. Grandel GmbH v. Drg Randel Inc.*, WIPO Case No. D2005-0829; *Microsoft Corporation v. J. Holiday Co.*, WIPO Case No. D2000-1493; *Playboy Enterprises International, Inc. v. Hector Rodriguez*, WIPO Case No. D2000-1016.

In relation to the domains with geographic identifiers (e.g. <bluecrossblueshieldofcalifornia.com>, <bluecrossblueshieldohio.com>), the addition of such identifiers does not diminish the confusing similarity with the Complainant's marks. A geographical identifier would not usually, by itself, bring anything in particular to mind, such that its incorporation in a domain name might distinguish it from a mark. Even on an interpretation most favorable to the Respondent, those identifiers are at best a neutral addition.

In relation to the domains that add other words, all of those words appear to create or emphasize an association with the Complainant's business, its mark, or its licensees (e.g. "anthembluecrossandblueshield.com", "bluecrossdentalinsurance.com"). As such, the addition of those words may increase the likelihood of confusion with the Complainant or its marks.

One of the disputed domain names – <bluecrosscom.com> – neither adds an apparent geographical indicator nor a word that increases confusion with the Complainant's mark. But this particular disputed domain name only adds "com", which does not appear to distinguish the Complainant's mark. Rather, that addition appears simply as a repetition of the domain extension ".com". This addition therefore appears relevantly similar to e.g. the addition of "www", which was disregarded for the purpose of confusingly similarity by the panel in the *Domain Deluxe* case.

For these reasons, the Panel finds that these domain names are confusingly similar to the registered marks in which the Complainant has rights.

**Domains wholly incorporating the Complainant's common law mark**

15 of the 100 domain names in dispute wholly incorporate the Complainant's BCBS mark. (In the attachment to this decision, these domain names are numbered 2-3, 9-11, 31-36, 74-75, 78 and 88.)

These domain names also add other elements to the BCBS mark, being either:

- obvious geographical indications (e.g. "bcbsofmississippi.com");

- as argued by the Complainant – apparent abbreviations of geographical indications (e.g. "bcbsofmn.com") or misspellings of such indications (e.g. "bcbscu.com" or "bcbssfl.com");

- words that suggest an association with the Complainant ("exellusbcbs.com", "wwwhighmarkbcbs.com"). The Complainant noted that both "Excellus Blue Cross and Blue Shield" and "Highmark Blue Cross and Blue Shield" are its current licensees;

- one miscellaneous mark: "bcbshsm.com". The addition "hsm" is not referred to by the Complainant as being in one of the above categories, or as being otherwise letters associated with the Complainant.

All of these domain names entirely incorporate the Complainant's BCBS mark. The question is whether that incorporation, by itself, renders the disputed domain names confusingly similar to the mark. Would Internet users be confused by those disputed domain names?

The answer to this seems to be more clearly 'yes', in relation to those domain names that identifiably suggest e.g. a geographical location or a word with a particular association with the Complainant (e.g. "highmark" or "mississippi") in combination with the Complainant's BCBS mark.

The answer is more difficult in relation to those disputed domain names that add letters that are not clearly referable to the Complainant or a geographical location. For example, it is more difficult to find such an association in relation to the disputed domain names <bcbsli.com>, <bcbscu.com>, <bcbsi.com>, <bcbssil.com> and <bcbssfl.com>. The letters added to "bcbs" in these cases, are not clearly referable to any particular State of the United States of America on their face, or any other particular location. Neither do the additions appear to be letters or words with any particular connotation at all.

It is of course possible that an Internet user might see e.g. the domain name <bcbssil>, separately recognize the BCBS mark, and then assume that the letters "sil" have some association with the Complainant. However, it also seems plausible that an Internet user might assume that the letters "bcbssil" have some other association, since a substantial part of the domain name ("sil") has no clear association with the Complainant or its mark, and is not clearly referable to a location. Equally, an Internet user might identify the Complainant's mark in "bcbsi.com", on the assumption that the "i" is an abbreviation for e.g. "Illinois" (or some other location). But, since that State is virtually never (to this Panel's knowledge) abbreviated in that way, someone might equally assume that the whole abbreviation has a different association.

On one view, the incorporation of additional letters to a four–letter combination is proportionately significant, and may be sufficient to distinguish those letters from the Complainant's mark. In other cases under the Policy, involving the entire incorporation of an acronym in which a complainant had no registered rights, the panel commented that the issues were "finely balanced". See, *Digital Channel Partners Ltd. v. Bilham Solutions and Marlies Bilham*, WIPO Case No. D2000-1246. That case involved the domain names incorporating the acronym "dcp" with identifiable geographical indications added, such as "dcpglobal.com". Ultimately, that case was decided for the Complainant. The issues in this case are, if anything, more finely balanced because many of the geographical additions are difficult or impossible to identify as such.

On another view, the Complainant's BCBS mark is sufficiently distinctive that its entire incorporation necessarily renders a domain name that incorporates it confusingly similar to the mark, whether or not letters are added, including letters that might suggest a geographical location. Although not stated in those terms, this seems to have been the basis for the panel's finding in *Blue Cross and Blue Shield Association v. Domain Deluxe*, WIPO Case No. D2005-0209 cited above. The panel in that case noted that the addition of a geographic location does not prevent a finding of confusing similarity. The panel appeared to accept that even single letter additions such as "m" (in "wwwbcbsm.com") and "t" (in "wwwbcbst.com") could be such indicators.

On balance, the Panel finds that all of these 15 domain names are confusingly similar to the Complainant's BCBS mark. The Panel makes this finding for the following reasons.

Firstly, as evidenced by the Complainant and accepted in the *Domain Deluxe* case, the BCBS mark is widely-known in the jurisdictions in which the Complainant does business. (As noted in *Skype Limited v. Benjamin Decraene*, WIPO Case No. D2005-1112, the fact that secondary meaning may only exist in a particular geographic area does not limit a complainant's ability to assert common law trademark rights for the purpose of the Policy.) For this reason, there is a likelihood that the public in those jurisdictions might naturally identify the BCBS element of the disputed domains with the Complainant, and assume (at least) that any further addition describes some other aspect or location of the Complainant's business. This confusing association is even more likely for the disputed domains that incorporate the business names of the Complainant's licensees.

Secondly, and as noted above, the Complainant has previously been successful in the *Domain Deluxe* case - a proceeding involving a number of domains very similar to the 15 which incorporate the BCBS mark here.

This Panel notes that, as cited in item 4.1 of the *WIPO Overview of WIPO Panel Views on Selected UDRP Questions*, the consensus of panel views is that panels consider it desirable that their decisions are consistent with prior panel decisions dealing with similar fact situations. This ensures that the UDRP system operates in a fair, effective and predictable manner for all parties.

This Panel has taken a similar approach to the disputed domain names in this case which are relevantly similar to those in the *Domain Deluxe* case. This Panel has taken that approach even though the issues are more finely balanced in relation to a number of these 15 domain names.

The majority of the domain names in dispute in the *Domain Deluxe* Case (18 of the 19 then in dispute) wholly incorporated the Complainant's BCBS mark, with additions that were either arguably trivial (such as by the addition of single letters) or which might be identified with geographical locations. In either case, the distinctive element remained the Complainant's BCBS mark. (The remaining domain name then in dispute wholly incorporated the Complainant's BLUE CROSS and BLUE SHIELD marks.)

As to the additions to the Complainant's BCBS mark that add letters with no clear association, the added letters are the smaller component of the domain name. These are the disputed domain names <bcbshmo.com>, <bcbsli.com>, <bcbscu.com>, <bcbsi.com>, <bcbssfl.com>, <bcbssil.com>, and <bcbsst.com>. As such, an Internet user might be more likely to identify the Complainant's BCBS mark or, at least, be confused by the incorporation of that mark.

The Panel notes that it does not include in this particular group the domain names <bcbsofkc.com> and <bcbsofmn.com>, on the basis that the word "of" would naturally be identified as such. In these cases, there would be a recognizable 'break' between the "bcbs" element of those domains, and the letters that follow the word "of". This break appears to emphasize the "bcbs" mark, and so increases the likelihood of confusion.

Finally, the Panel notes that it was precisely the probability of confusing similarity that is likely to have driven the Respondent's domain name selection in this case.

**Misspelled domains**

All 33 remaining disputed domain names are obvious misspellings of the Complainant's registered marks, or contain a misspelled component of those marks. It is clear that the Respondent has, by registering and using these disputed domain names, engaged in 'typosquatting'. Typosquatting is a practice in which a respondent registers domain names with slight misspellings of a complainant's mark to divert internet traffic. There are a substantial number of panel decisions which found such domain names to be confusingly similar to the marks which they misspell. (See e.g. *Deutsche Bank Aktiengesellschaft v New York TV Tickets Inc.*, WIPO Case No. D2001-1314; *Yurtici Kargo Servisi A.S. v. Yurticicargo Yurticikargo*, WIPO Case No. D2003-0707, that cite other panel decisions which have made similar findings).

It is possible in some cases that a misspelling could be so significant that there would be no potential for confusion with a complainant's mark. However a misspelling of that kind would defeat its own purpose. The purpose of such misspellings is almost invariably to capitalize on the reputation of a complainant's mark. The mark must remain recognizable for the misspelling to achieve that aim. In other words, by typosquatting, a respondent relies on there being confusing similarity.

WIPO Domain Name Decision 2007-0022                                    Page 8 of 11

(For a statement to this effect, see e.g. *Pfizer, Inc. v. Seocho and Vladimir Snezko*, WIPO Case No. D2001-1199.) This is such a case.

In this case, the misspellings of the Complainant's registered marks, all recognizably retain an overall impression of those marks (e.g. "bluescrosss.com", "blueecrossca.com").

There are some misspellings in this case that, in the Panel's view, arguably come close to obscuring the Complainant's mark. These disputed domains are a number of those addressed above (under the heading 'Domains wholly incorporating Complainant's mark'), which misspell abbreviations of geographical locations in combination with the Complainant's BCBS mark. However, the Panel has found that those domains are confusingly similar to the Complainant's mark, for the reasons set out above under that heading.

For these reasons, the Panel finds that the disputed domain names are all, to varying degrees, confusingly similar to marks in which the Complainant has rights.

### C. Rights or Legitimate Interests

The Respondent claims that it has a legitimate interest in the disputed domain names. It rests this legitimate interest on the claim that it is "in the process of starting a business using the words Blue, Cross, Shield, etc." and claims that the number of domain names it has registered in this connection is proof of that contention. In effect, the Respondent appears to claim that it is making demonstrable preparations to use the disputed domain names in connection with a *bona fide* offering of goods or services, within the meaning of paragraph 4(c)(i) of the Policy.

The Respondent offers no proof at all for these contentions. The Respondent's explanation for not offering any concrete proof is that doing so "may jeopardize his business plans".

From a common sense perspective this claim is simply not persuasive, particularly in the absence of any evidence to support it and the Respondent's history as an unsuccessful respondent in prior proceedings. It is inconceivable that the Respondent registered such a large number of domain names, including the full trademarks, apparent abbreviations, and/or combinations, all confusingly similar to the Complainant's marks, by accident. The Respondent's contention - that its registration of a large number of related domain names demonstrates its legitimate interest - is plainly wrong. A respondent obviously cannot use the flagrancy of its own conduct in its defense.

A respondent with a consistent history of typosquatting, like this one, would usually require strong explanations and evidence to establish a legitimate interest in a subsequent case with apparently similar facts. Otherwise a panel would naturally infer that the respondent was continuing a similar pattern of conduct. But the Respondent in this case provides neither any convincing explanation nor any evidence of any legitimate interest.

The disputed domain names all appear to revert to 'portal' websites. Previous panels have found that the use of a domain name, incorporating a complainant's mark, in connection with a directory or portal site, is not *bona fide*. (See e.g. *Humana Inc. v Cayman Trademark Trust*, WIPO Case No. D2006-0073). The Respondent's use in this case is relevantly similar.

For these reasons, the Panel finds that the Complainant has established the second element required by the Policy.

### D. Registered and Used in Bad Faith

Paragraph 4(b)(ii) of the Policy provides that bad faith may be found where a respondent has "registered the domain name in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name, provided that you [the Respondent] have engaged in a pattern of such conduct."

The Respondent's conduct in registering 100 domain names which are confusingly similar to the Complainant's marks is itself sufficient to establish such a pattern of conduct. The Respondent also has a pattern of conduct established from its involvement in previous proceedings under the Policy. As stated by the panel in *Toyota Motor Credit Corporation v. Digi Real Estate Foundation*, WIPO Case No. D2005-1111:

"Respondent's bad faith is established already by the fact that Respondent was involved in several domain name dispute resolution proceedings as a respondent (see *Adidas-Salomon AG v. Digi Real Estate Foundation*, WIPO Case No. D2004-1079, *Medco Health Solutions, Inc v. Digi Real Estate Foundation*, WIPO Case No. D2005-0216 and *Robert Half International Inc. v. Digi Real Estate Foundation* (Nominet Dispute No. 2177) and that in all cases, the panels found that the domain names should be transferred. This represents a pattern of conduct in registering domain names in order to prevent the owner of a trademark from reflecting the mark in a corresponding domain name."

Although it is strictly unnecessary to go further, the Panel also finds that the Respondent has demonstrated bad faith under

paragraph 4(b)(iv) of the Policy. Paragraph 4(b)(iv) of the Policy provides (in part) that there is evidence of bad faith in circumstances where the Respondent, by using the domain name, has intentionally attempted to attract, for commercial gain, Internet users to a website by creating a likelihood of confusion with the Complainant's mark as to the source, sponsorship or affiliation, or endorsement of the Respondent's website.

For similar reasons to those set out above, the circumstances in paragraph 4(b)(iv) of the Policy are present in this case. The Respondent's websites, being directory websites, are likely to operate for some commercial gain, e.g. for 'click through' revenue. The websites also include links to areas of business that are associated with the Complainant, including e.g. to "Blue Cross Health Insurance". As noted above, all the disputed domain names incorporate, in whole or part, the Complainant's marks or recognizable misspellings of those marks. As stated in the *Domain Deluxe* case (quoted in this connection by the Complainant), the panel found that the respondent in that case was likely to be aware of the Complainant because of the fame of its marks. All this evidence strongly suggests that the Respondent was aware of the Complainant, and sought to profit by creating a confusing association with the Complainant.

The Complainant has proved this third element.

## 7. Decision

For all the foregoing reasons, in accordance with Paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the 100 disputed domain names, as listed in the attachment, be transferred to the Complainant.

James A. Barker
Sole Panelist

Dated: May 7, 2007

## Attachment

| No. | Domain Name | Registrar |
| --- | --- | --- |
| 1 | anthembluecrossandblueshield.com | Affordable Computer Solutions Inc. |
| 2 | bcbsofmississippi.com | Affordable Computer Solutions Inc. |
| 3 | bcbshmo.com | Affordable Computer Solutions Inc. |
| 4 | bluecrossblueshieldcolorado.com | Affordable Computer Solutions Inc. |
| 5 | bluecrossblueshieldnj.com | Affordable Computer Solutions Inc. |
| 6 | bluecrossblueshieldofcalifornia.com | Affordable Computer Solutions Inc. |
| 7 | bluecrossblueshieldofil.com | Affordable Computer Solutions Inc. |
| 8 | bluecrossdentalinsurance.com | Affordable Computer Solutions Inc. |
| 9 | bcbsofkansas.com | Affordable Computer Solutions, Inc. |
| 10 | bcbsofkc.com | Affordable Computer Solutions, Inc. |
| 11 | bcbsofmn.com | Affordable Computer Solutions, Inc. |
| 12 | bluecrossbleshield.com | Affordable Computer Solutions, Inc. |
| 13 | bluecrossblueshieldofnorthcarolina.com | AllDomains.com |
| 14 | blueshieldd.com | Backslap Domains, Inc. |
| 15 | bleucrossblueshield.com | Bizcn.com, Inc. |
| 16 | bluecorssblueshield.com | Bizcn.com, Inc. |
| 17 | bluecossblueshield.com | Bizcn.com, Inc. |
| 18 | bluecrossblueshied.com | Bizcn.com, Inc. |
| 19 | bluecrossblueshiel.com | Bizcn.com, Inc. |
| 20 | bluecrossbluesield.com | Bizcn.com, Inc. |

| | | |
|---|---|---|
| 21 | bluecrosssblueshield.com | Bizcn.com, Inc. |
| 22 | bluecrossblueshieldoklahoma.com | Blueberry Hill Communications, Inc. dba 4domains.com |
| 23 | bluecrossblueshieldoftx.com | Cool Ocean, Inc. |
| 24 | bluecrossblueshieldgeorgia.com | Discountdomainservices, LLC |
| 25 | bluecrossblueshieldillinois.com | Domaininternelname, LLC |
| 26 | bluecrossblueshieldofsc.com | Domain-It!, Inc. dba Domain-It! |
| 27 | bluecrossofflorida.com | Domain Mode, Inc. |
| 28 | bluecrossbluueshield.com | Domain Monkeys, LLC |
| 29 | bluecrossblueshieldnewyork.com | DotSpeedy LLC dba dotspeedy.com |
| 30 | bluecrossblueshieldoforegon.com | Dotted Ventures, Inc. |
| 31 | bcbsli.com | eNom |
| 32 | bcbscu.com | eNom |
| 33 | bcbsi.com | eNom |
| 34 | bcbssfl.com | eNom |
| 35 | bcbssil.com | eNom |
| 36 | bcbsst.com | eNom |
| 37 | blecrossca.com | eNom |
| 38 | blecross.com | eNom |
| 39 | bliecross.com | eNom |
| 40 | blluecrossblueshield.com | eNom |
| 41 | blueccrossca.com | eNom |
| 42 | bluecoss.com | eNom |
| 43 | bluecossmn.com | eNom |
| 44 | bluecrossandshield.com | eNom |
| 45 | bluecrossblueshielddentalinsurance.com | eNom |
| 46 | bluecrossblueshieldfl.com | eNom |
| 47 | bluecrossblueshieldnebraska.com | eNom |
| 48 | bluecrossblueshieldmass.com | eNom |
| 49 | bluecrossblueshieldmi.com | eNom |
| 50 | bluecrossblueshieldofalabama.com | eNom |
| 51 | bluecrossblueshieldofarizona.com | eNom |
| 52 | bluecrossblueshieldofkansas.com | eNom |
| 53 | bluecrossblueshieldofflorida.com | eNom |
| 54 | bluecrossblueshieldoflouisiana.com | eNom |
| 55 | bluecrossblueshieldsouthcarolina.com | eNom |
| 56 | bluecrossblueshieldtennessee.com | eNom |
| 57 | bluecrossblueshieldoftennessee.com | eNom |
| 58 | bluecrossblueshieldohio.com | eNom |
| 59 | bluecrossbueshield.com | eNom |
| 60 | bluecrosscom.com | eNom |
| 61 | bluecrossminnesota.com | eNom |
| 62 | bluecrossofarizona.com | eNom |
| 63 | bluecrossofillinois.com | eNom |
| 64 | bluecrossoforegon.com | eNom |
| 65 | bluecrossofwisconsin.com | eNom |
| 66 | bluecrossps.com | eNom |
| 67 | bluecrosssheild.com | eNom |

| # | Domain | Registrar |
|---|--------|-----------|
| 68 | bluecrosstravelinsurance.com | eNom |
| 69 | bluecrosswisonsin.com | eNom |
| 70 | bluecrssca.com | eNom |
| 71 | bluescross.com | eNom |
| 72 | blueshieldcross.com | eNom |
| 73 | capblucross.com | eNom |
| 74 | exellusbcbs.com | eNom |
| 75 | wwwhighmarkbcbs.com | eNom |
| 76 | buecrossblueshield.com | eNom |
| 77 | bluecrossblueshieldofmontana.com | Esoftwiz Inc. |
| 78 | bcbsstx.com | Ever Ready Names, Inc. |
| 79 | bluecrossblueshieldd.com | Ever Ready Names, Inc. a/k/a Red Pillar, Inc. |
| 80 | blueecrossca.com | Ever Ready Names, Inc. a/k/a Confirm Names, Inc. |
| 81 | bluecrossblueshieldoregon.com | Interlink Co., Ltd |
| 82 | bluecrssblueshield.com | Haveaname, LLC |
| 83 | bluecrossluesheild.com | Humeia Corporation |
| 84 | bluecrossblueshieldmichigan.com | Indirection Identity Corporation |
| 85 | bluecrossbluehield.com | Indirection Identity Corporation |
| 86 | blecrossblueshield.com | JJH Investments, L.L.C., but then registered with eNom |
| 87 | bluerossblueshield.com | Le Grand Nom, Inc., but then registered with eNom |
| 88 | bcbsillinois.com | Lead Networks Domains Pvt. Ltd. |
| 89 | bluecrossny.com | Lead Networks Domains Pvt. Ltd. |
| 90 | bluecrosspremera.com | NameTorrent.ca Inc. |
| 91 | bluecrossblueshieldofwisconsin.com | Network Solutions, LLC |
| 92 | bluecrossblueshieldofdelaware.com | 007Names, Inc. |
| 93 | bluecrossblueshieldofkentucky.com | PriceDomain.ca Internet Services Corporation |
| 94 | bluecrosscanada.com | RallyDomains.com Inc. |
| 95 | bluecrossblueshieldminnesota.com | R.B. Data Net LTD |
| 96 | regenceblueshieldofidaho.com | RJG Ventures, L. L. C. |
| 97 | blueshhield.com | Threadtrade.com, Inc. |
| 98 | bluecrossblueshieldalabama.com | Universal Registration Services, Inc. |
| 99 | bluecrossblueshieldmissouri.com | Web Internet LLC |
| 100 | bluecrossofalabama.com | 89AM Web Services, Inc. |